**Richard James WILKERSON, Petitioner–Appellant,**

v.

**James A. COLLINS, Director, Texas Department of Criminal Justice, Institutional Division, Respondent–Appellee.**

No. 91–2879.

United States Court of Appeals, Fifth Circuit.

Jan. 6, 1992.

---

Robert A. Shults, Sheinfeld, Maley & Kay, Houston, Tex., for Wilkerson.

Charles A. Palmer, Dana E. Parker, Robert S. Walt, Asst. Attys. Gen., Don Morales, Atty. Gen., Austin, Tex., for Collins.

Before CLARK, Chief Judge, KING and DAVIS, Circuit Judges.

CLARK, Chief Judge:

## I.

Richard James Wilkerson appeals the district court's denial of his petition for writ of habeas corpus. We affirm the district court's judgment and vacate the stay of execution.

## II.

The recitation of facts is taken in large part from the district court's opinion. *Wilkerson v. Collins*, No. H–91–2252 (S.D.Tex. August 14, 1991) (Memorandum Opinion).

On June 30, 1983, Wilkerson, together with James Randle and Kenneth Ransom, entered the Malibu Grand Prix Raceway (Malibu) after closing time. Wilkerson, who recently had been fired from the Malibu, demanded his final paycheck from the shift supervisor, Ar ' Varughese. Varughese accompanied Wilkerson to the manager's office while Randle and Ransom remained outside with three Malibu employees. Upon entering the office Wilkerson struck Varughese and, threatening him with a knife, directed him to open the safe. After Varughese complied, Wilkerson killed him with the knife, stabbing him approximately forty-two times. Randle and Ransom killed the other three Malibu employees. Wilkerson, Randle and Ransom left the Malibu with money taken from the safe and Wilkerson's final payroll check, which he eventually cashed.

In July 1983, Wilkerson was indicted for the offense of capital murder. On January 6, 1984, following trial, a verdict was returned finding Wilkerson guilty of the capital offense. The following day the jury returned affirmative answers to the special issues submitted under the Texas death penalty statute, Texas Code of Criminal Procedure article 37.071. Pursuant to the jury's findings and the Texas statute, Wilkerson was sentenced to death.

The Texas Court of Criminal Appeals affirmed Wilkerson's conviction and death sentence and denied rehearing. *Wilkerson v. State*, 726 S.W.2d 542 (Tex.Cr.App.1986). Certiorari was denied by the United States Supreme Court. *Wilkerson v. Texas*, 480 U.S. 940, 107 S.Ct. 1590, 94 L.Ed.2d 779 (1987).

On August 13, 1987, Wilkerson filed his first application for a post-conviction writ of habeas corpus in state court. The application raised, among other things, a claim of ineffective assistance of trial counsel and a constitutional challenge to the state's use of peremptory jury challenges under *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

The state trial court, without conducting a hearing, recommended that relief be denied, and forwarded the application to the Texas Court of Criminal Appeals. That court remanded the case for an evidentiary hearing on the *Batson* claim.

The trial court conducted an evidentiary hearing and concluded that Wilkerson had made a prima facie showing of purposeful discrimination by the prosecution. However, the court ultimately concluded that Wilkerson had not proven a *Batson* claim, based on the prosecutor's race-neutral explanations for its peremptory challenges to the black venirepersons. The Texas Court of Criminal Appeals denied Wilkerson habeas corpus relief. *Ex Parte Wilkerson*, No. 17,443–02 (Tex.Cr.App. May 15, 1989). The United States Supreme Court denied certiorari. *Wilkerson v. Texas*, 493 U.S. 924, 110 S.Ct. 292, 107 L.Ed.2d 272 (1989). Two justices dissented, stating that a mixed-motives case was established and that, under *Batson*, race should not play any part in a prosecutor's use of peremptory challenges. *Wilkerson*, 110 S.Ct. at 293–95 (Marshall, J., dissenting; joined by Brennan, J.).

In July 1989, Wilkerson filed a *pro se* motion seeking an emergency stay from the United States District Court. He also requested appointment of counsel. The district court granted the stay and appointed counsel. Wilkerson filed an amended petition. The district court granted the state's motion for summary judgment. Wilkerson appealed. This court remanded the action to the district court with directions to dismiss without prejudice because Wilkerson failed to exhaust all habeas corpus claims in state court.

After further state court proceedings, Wilkerson's motion for stay of execution and for an evidentiary hearing was denied by the Texas Court of Criminal Appeals. Wilkerson again petitioned the district court for habeas corpus relief. The state moved for summary judgment. The district court found that Wilkerson had exhausted state remedies, granted the state's motion for summary judgment, and denied Wilkerson's application for a stay of execution.

Wilkerson noticed the present appeal. We granted a stay of execution to enable

appellate review and heard oral argument by counsel.

## III.

Wilkerson asserts here that he is entitled to relief based on claims related to the operation of the Texas capital punishment sentencing statute, the prosecutor's peremptory challenges of jurors and ineffective assistance of counsel.

### A. *Jury Discretion.*

■ Wilkerson makes an Eighth Amendment challenge to the procedures which Texas imposed on the sentencing phase of his trial. He claims the jury could not give full consideration to his evidence in deciding whether to impose the death penalty. He urges that in his case, *Penry v. Lynaugh*, 492 U.S. 302, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989), establishes that the statute precluded jury consideration of the mitigating value of his young age and his cooperation with authorities. More basically, his attack is that the jury could not exercise the sort of guided discretion which the constitution requires.

Wilkerson's sentencing was conducted under a statute which provided, in part:

(a) Upon a finding that the defendant is guilty of a capital offense, the court shall conduct a separate sentencing proceeding to determine whether the defendant shall be sentenced to death or life imprisonment.... [E]vidence may be presented as to any matter that the court deems relevant to sentence.... The state and the defendant or his counsel shall be permitted to present argument for or against sentence of death.

(b) On conclusion of the presentation of the evidence, the court shall submit the following three issues to the jury:

(1) whether the conduct of the defendant that caused the death of the deceased was committed deliberately and with the reasonable expectation that the death of the deceased or another would result;

(2) whether there is a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society; and

(3) if raised by the evidence, whether the conduct of the defendant in killing the deceased was unreasonable in response to the provocation, if any, by the deceased.

(c) The state must prove each issue submitted beyond a reasonable doubt, and the jury shall return a special verdict of "yes" or "no" on each issue submitted.

(d) The court shall charge the jury that:

(1) it may not answer any issue "yes" unless it agrees unanimously; and

(2) it may not answer any issue "no" unless 10 or more jurors agree.

(e) If the jury returns an affirmative finding on each issue submitted under this article, the court shall sentence the defendant to death. If the jury returns a negative finding on or is unable to answer any issue submitted under this article, the court shall sentence the defendant to confinement in the Texas Department of Corrections for life. The court, the attorney for the state or the attorney for the defendant may not inform a juror or a prospective juror of the effect of failure of the jury to agree on an Issue submitted under this article.

TEX.CODE CRIM.PROC.ANN. art. 37.071.

The court's punishment phase charge to the jury was, in pertinent part, as follows:

The mandatory punishment for capital murder is death or confinement in the penitentiary for life.

The burden of proof in this phase of the trial still rests upon the State and never shifts to the defendant. Each Special Issue submitted must be proved by the State beyond a reasonable doubt; therefore, before any issue may be answered "Yes", all jurors must be convinced by the evidence beyond a reasonable doubt that the answer to such issue should be "Yes." If the jury unanimously determines (and only if such determination is unanimous) that the State has proved an issue beyond a reasonable doubt, then the Foreman will so record

the Jury's answer to such issue by signing his name to the finding reflecting such answer on the form provided for that purpose.

You are further instructed that if any juror, after considering the evidence and these instructions, has a reasonable doubt as to whether the answer to a Special Issue should be answered "Yes", then such juror should vote "No" to that Special Issue in the Jury's deliberations.

If ten (10) jurors or more vote "No" as to any Special Issue, then the answer of the Jury shall be "No" to that issue, and the Foreman will so record the Jury's answer by signing his name to the finding reflecting such answer on the form provided for that purpose.

If there is any Special Issue on which the vote of the jurors is not unanimously "Yes" or not at least ten (10) in favor of an answer of "No", then there shall be no answer for that Special Issue, and the Foreman should not sign his name to any answer form for that Special Issue.

You are further instructed that if the jury returns an affirmative finding on each of the issues submitted, this court shall sentence the defendant to death. If the jury returns a negative finding on any issue submitted, the court shall sentence the defendant to confinement in the Texas Department of Corrections for life.

No objections were made to the court's instructions.

In *Furman v. Georgia*, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972), the Court held that the death penalty could not be constitutionally imposed unless the discretion of the sentencer is "suitably directed and limited so as to minimize the risk of wholly arbitrary and capricious action." *Gregg v. Georgia*, 428 U.S. 153, 189, 96 S.Ct. 2909, 2932, 49 L.Ed.2d 859 (1976). "[A]ccurate sentencing information is an indispensable prerequisite to a reasoned determination of whether a defendant shall live or die by a jury of people who may never before have made a sentencing decision." *Id.* at 190, 96 S.Ct. at 2933. When we cannot say that an effort to "minimize

the jury's sense of responsibility for determining the appropriateness of death.... had no effect on the sentencing decision, that decision does not meet the standard of reliability that the Eighth Amendment requires." *Caldwell v. Mississippi*, 472 U.S. 320, 341, 105 S.Ct. 2633, 2646, 86 L.Ed.2d 231 (1985).

■ The jury's exercise of its sentencing discretion must be channeled "by 'clear and objective standards' that provide 'specific and detailed guidance' and that 'make rationally reviewable the process for imposing a sentence of death'." *Franklin v. Lynaugh*, 487 U.S. 164, 108 S.Ct. 2320, 2331, 101 L.Ed.2d 155 (1988) (*quoting Godfrey v. Georgia*, 446 U.S. 420, 428, 100 S.Ct. 1759, 1764–65, 64 L.Ed.2d 398 (1980) (plurality opinion)). While the jury must be allowed to make an informed decision, this does not require that the jury be informed of every detail in exercising sentencing discretion. *Cf. Sonnier v. Maggio*, 720 F.2d 401, 408 (5th Cir.1983) (Rejecting the defendant's contention that the court must explicitly instruct the jury on the weight to be accorded aggravating and mitigating factors).

The Texas special issues have previously been recognized, in other contexts, as sufficient guides to jury discretion. *See Franklin*, 108 S.Ct. at 2332; *Jurek v. Texas*, 428 U.S. 262, 275–76, 96 S.Ct. 2950, 2957–58, 49 L.Ed.2d 929 (1976). We find them so in the present case also.

### B. *Penry Claim.*

Wilkerson alleges that the statute did not allow the jury to consider or give full effect to his mitigating evidence of youth and acceptance of responsibility. Texas replies that Wilkerson's claim is procedurally barred and, if not barred, the Texas special issues provided the jury with a constitutionally sufficient vehicle to give mitigating effect to Wilkerson's evidence.

The sentencing authority must be allowed to consider mitigating factors before sentencing a defendant to death. *Jurek v. Texas*, 428 U.S. 262, 271, 96 S.Ct. 2950, 2956, 49 L.Ed.2d 929 (1976). A state's statute must allow for "*particularized consid-*

*eration* of relevant aspects of the character and record" of the defendant. *Woodson v. North Carolina,* 428 U.S. 280, 303, 96 S.Ct. 2978, 2990–91, 49 L.Ed.2d 944 (1976). To uphold Wilkerson's sentence, his jury must have been able to consider and give effect to any mitigating evidence relevant to the background or character of the defendant and circumstances of the crime. *Penry v. Lynaugh,* 492 U.S. 302, 109 S.Ct. 2934, 2945–47, 106 L.Ed.2d 256 (1989).

### 1. Procedural bar?

█ The state argues that Wilkerson's *Penry* claim is not properly before the court because he failed to request special instructions as to consideration of mitigating evidence. Wilkerson replies that *"Penry* itself gives little support to this construction," quoting *Mayo v. Lynaugh,* 893 F.2d 683, 689 (5th Cir.1990). *See Id.* at 689–90. The state also points out that whether a special instruction request is a federal prerequisite for preservation of a *Penry* claim is before the court en banc in *Graham v. Collins,* 903 F.2d 1014 (5th Cir.1990) (granting rehearing en banc).

The answer to these contentions has already been given. The highest court in Texas held that failure to object does not waive the petitioner's right to assert a *Penry* claim. *Selvage v. Collins,* 816 S.W.2d 390, 391–92 (Tex.Cr.App.1991). Wilkerson's failure to object or request special instructions does not bar his claim. *Cf. Mayo v. Lynaugh,* 893 F.2d 683, 689–90 (5th Cir.1990).

### 2. Penry factors.

Wilkerson contends his youth and his cooperation or acceptance of responsibility come within *Penry* 's criticism of the Texas sentencing scheme and that the jury was unable to give them full mitigating consideration. The state argues that Wilkerson's sentence should not be set aside unless there is a reasonable probability that the jury would have interpreted its instructions to preclude effective consideration of the mitigating force of the evidence. *Boyde v. California,* 494 U.S. 370, 110 S.Ct. 1190, 1198–99 & n. 5, 108 L.Ed.2d 316 (1990). The state contends the second special issue, future dangerousness, allowed the jury to give such consideration to youth. It further contends cooperation and acceptance of responsibility could be considered under both the first and second special issues.

#### a. *Youth.*

█ Whether "youth", in general, may be given full consideration under the Texas scheme has recently been decided in this circuit. In *Graham v. Collins,* 950 F.2d 1009 (5th Cir.1992) (*en banc*), the court held that the Texas scheme allowed full consideration of youth as a mitigating circumstance.

Wilkerson says his youth is more than a chronological fact. Age represents "a time and condition of life when a person may be most susceptible to influence and to psychological damage ... [and] lack[ing] the experience, perspective, and judgment expected of adults." *Eddings v. Oklahoma,* 455 U.S. 104, 115–16, 102 S.Ct. 869, 877, 71 L.Ed.2d 1 (1982). Youth, he urges, involves not only a measured span of time, but also the "qualities of youth" or "mental age." Wilkerson alleges that he has impairments of a long-standing nature which affect his mental age and the quality of his youth.

When *Penry v. Lynaugh,* 832 F.2d 915, 925–26 (5th Cir.1987), *aff'd in part, rev'd in part, and remanded,* 492 U.S. 302, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989), was remanded to this court, we concluded, 882 F.2d 141 (5th Cir.1989), that the Texas special issues did not permit the jury to consider the mitigating effect of evidence concerning the defendant's retardation, arrested emotional development, and troubled youth. Penry was shown to have limited mental ability at a competency hearing before trial. There was testimony at that hearing that Penry was beaten as a child and behaved strangely as both a child and a teenager. At the guilt/innocence phase of his trial, the three testifying psychiatrists disagreed as to the degree and cause of Penry's mental limitations. But, all agreed that Penry had mental limitations

and that his problems manifested themselves, among other ways, in an inability to learn from his mistakes. 832 F.2d at 917. Penry was over 20 years old at the time of the crime. 832 F.2d at 925 n. 8.

Wilkerson claims that his habeas corpus petition demonstrates that he suffers from a serious, long-standing mental impairment that was first diagnosed when he was seven years old. He alleges that a recent neuropsychological evaluation confirms that he is borderline mentally retarded and suffers from serious brain dysfunction and cognitive impairments, including severely impaired auditory processing and that he is functionally illiterate. Wilkerson argues that this recent evaluation is consistent with the results of a much earlier psychological evaluation performed when he was in the first grade. The state replies that Wilkerson's school report does not show him to be mentally retarded though it discloses his level of intelligence is low. The state points out that Wilkerson's strongest scores were in the test areas dealing with day-to-day problems.

More significant than the degree of difference in the mental and emotional state of the two defendants is the fact that the serious physical and psychological deficits asserted by Penry were established in the record. Here, Wilkerson's much more attenuated problems must be the subject of conjecture built upon a school report prepared when Wilkerson was in the first grade. No psychiatric testimony was offered at trial, as was done in *Penry*. Instead, Wilkerson refers to a recent psychological evaluation which he first tendered in support of his motion for a hearing in the state habeas corpus proceedings.

In *De Luna v. Lynaugh*, 890 F.2d 720, 722 (5th Cir.1989), we affirmed the denial of habeas corpus relief to a defendant who, at trial, had offered no evidence arguably within *Penry*. The defendant, De Luna, 21 years old at the time of the crime, made no claim of childhood abuse or substance use which significantly reduced his mental capacities nor did he offer evidence of mental retardation. We apply that same reasoning here. A defendant cannot claim

factors exist in his case which are not covered by the Texas special issues unless he has offered proof of those factors at trial. To demonstrate that the trial court committed constitutional error in conducting his trial a defendant must afford that court the right to consider and rule on such proof.

In argument to the jury at the punishment phase, Wilkerson's trial counsel urged, without objection, his chronological age of nineteen years as a reason not to impose a death sentence. Obviously, counsel thought Wilkerson's age could receive full consideration under the Texas special issues. Nothing in the record indicates the jury failed to give due consideration to argument of counsel.

In *Ex Parte Jewel Richard McGee, Jr.,* 817 S.W.2d 77 (Tex.Cr.App.1991), Texas rejected a claim that a 19 year old defendant's relative youth could not be considered by the jury under the future dangerousness special issue. *See also Lackey v. State,* 819 S.W.2d 111 (Tex.Cr.App.1991) (on rehearing).

It is not necessary for us to rule on whether the second special issue permits consideration of Wilkerson's "mental age" claim. We hold it was too conjectural to establish a federal constitutional basis for habeas corpus relief.

#### b. *Acceptance of responsibility.*

■ Wilkerson also argues that the jury was precluded from giving full mitigating effect to his acceptance of responsibility for participation in the offense. Shortly after Wilkerson was arrested he gave a statement to police officers admitting his involvement in the robbery and the murder. He directed and accompanied the police to the locations where they found evidence of the crime. Wilkerson did not bargain with officers or request anything in return. The officers who took his statement believed that he was forthright and honest. Wilkerson contends that such acceptance of responsibility for one's criminal conduct and cooperation with police historically have been treated as character evidence which are entitled to consideration in miti-

gation of punishment. He argues that this mitigating relationship to criminal sentencing decisions is demonstrated by the United States Sentencing Guidelines, which provide for a reduction in the guideline offense level when the defendant demonstrates acceptance of responsibility for his criminal conduct. United States Sentencing Commission, *Guidelines Manual*, § 3E1.1 (1990).

Wilkerson points out that the jury was limited by the punishment stage instructions to giving yes or no answers to the special issues. This procedure confined the jury's role to determining whether Wilkerson's conduct was deliberate and whether there was a probability that in the future he would commit "criminal acts of violence that would constitute a continuing threat to society." Without special instructions, he argues, the jury was precluded from giving full mitigating effect to his acceptance of responsibility for his participation in the offense within the scope of the first special issue. Rather, without such instructions, he says the jury was bound to weigh his evidence of cooperation heavily in favor of an affirmative answer to the issue of deliberations.

Wilkerson contends that the second special issue also precluded the jury from considering and giving full effect to the mitigating effect of his evidence of cooperation. He argues that the jury reasonably could have concluded because he cooperated he was less culpable, less blameworthy and, when considered together with his age, had a sufficient possibility for rehabilitation to warrant a life sentence. At the same time, he argues, the jury could have concluded that, despite his potential for rehabilitation, the evidence required an affirmative answer to the second special issue.

Wilkerson calls to our attention that the jury specifically expressed confusion and uncertainty about the meaning of the second special issue. In a handwritten note, the jury foreman asked the court, "What is the effect if one of the Special Issues is not answered?" and "How is the word 'probability' in Special Issue No. 2 defined?" The

trial court responded that it could not answer the first question under the law and could not define the word "probability." *Cf. Jurek v. Texas*, 428 U.S. 262, 269 n. 5, 96 S.Ct. 2950, 2955 n. 5, 49 L.Ed.2d 929 (1976). Wilkerson argues that this expression of jury confusion and uncertainty confirms that the instructions were constitutionally unacceptable. He does not, however, challenge the court's refusal to answer the question about the result of a failure to answer.

The district court held that Wilkerson offered no authority for the proposition that his acceptance of responsibility or cooperation with the authorities were mitigating circumstances which would require the court to instruct the jury to give such effect to this evidence. The court refused to read *Penry* to encompass this type of evidence. It held that a defendant's acceptance of responsibility and cooperation with authorities are factors which this jury could consider in mitigation of punishment. We agree.

Wilkerson's trial counsel made a full and uninterrupted argument to the jury that Wilkerson's acceptance of responsibility could and should be considered under the special issues. The jury was free to accept this argument under the instructions of the court. Further instruction was not required.

## C. *Batson Claim.*

Wilkerson alleges that the jury selection process was so tainted that he is entitled to a new trial by properly selected jurors. Wilkerson was convicted and sentenced by an all-white jury. He claims that under *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), racial considerations formed an impermissible part in the prosecutor's use of peremptory challenges to strike two potential jurors who were black. The state argues that federal habeas corpus review of Wilkerson's *Batson* claim is barred because Wilkerson failed to timely object and that Wilkerson's claim is without merit.

Wilkerson was convicted and sentenced in 1984. *Batson* was decided in 1986. In

1987 the Court held that *Batson* is to be "applied retroactively to all cases, state or federal, pending on direct review or not yet final." *Griffith v. Kentucky*, 479 U.S. 314, 328, 107 S.Ct. 708, 716, 93 L.Ed.2d 649 (1987). The state argues that, notwithstanding the retroactivity of *Batson*, Wilkerson forfeited review as a matter of law by his failure to lodge a contemporaneous objection to the prosecutor's use of peremptory challenges. A contemporaneous objection would have provoked court consideration of this alleged misconduct at a point before trial where it could have been readily corrected. Wilkerson responds that no court has accepted the state's procedural default argument. Wilkerson further contends that he obviously has not waived the right to review because the habeas corpus trial court later considered the *Batson* claims on the merits.

The district court noted, but did not further address, the state's argument that Wilkerson's *Batson* claim is procedurally barred because Wilkerson's trial counsel failed to make a contemporaneous objection. Rather, the court discussed the merits of the claim and deferred to the state trial court's determination that the challenges were exercised for racially neutral reasons.

■■■ *Batson*'s retroactive effect does not control the issue here. "[T]he evidentiary rule established in *Batson* does not enter the analysis of the defendant's equal protection claim unless a timely objection is made to the prosecutor's use of his peremptory challenges." *Thomas v. Moore*, 866 F.2d 803, 804 (5th Cir.1989), *cert. denied*, 493 U.S. 840, 110 S.Ct. 124, 107 L.Ed.2d 85 (1989). Wilkerson's failure to timely object at trial is a constitutional bar to his *Batson* challenge.

In other contexts, we have held that "if the state courts reached the merits rather than relying on the procedural bar, we are also free to do so." *Tasco v. Butler*, 835 F.2d 1120, 1122 (5th Cir.1988). However, we have declined to apply that holding to *Batson* claims. "The nature of the claim requires that it be raised when the strikes are made." *Jones v. Butler*, 864 F.2d 348,

369 (5th Cir.1988) (on petition for rehearing). "The inquiry is essentially one of fact, dependent on credibility, and the passage of time would diminish the prosecutor's reconstruction of his reasons for striking a venireperson and the judge's evaluation of the juror." *Mayo v. Lynaugh*, 893 F.2d 683, 689 (5th Cir.) (Citing *Jones*, 864 F.2d at 369–70), *modified*, 920 F.2d 251 (5th Cir.1990). "Equity does not require that those who did not object benefit from *Batson*'s new evidentiary standard." *Jones*, 864 F.2d at 370. Since review of Wilkerson's *Batson* claim is barred here, we will not address the district court's ruling on the merits of his claim.

### D. Counsel Claim.

Wilkerson contends that the district court erred in denying his ineffective assistance of counsel claim based on the presumed correctness of state court findings under 28 U.S.C. § 2254(d). He asserts he was entitled to a federal evidentiary hearing. To receive such a hearing, Wilkerson must allege facts that, if proved, would entitle him to relief. *Townsend v. Sain*, 372 U.S. 293, 312, 83 S.Ct. 745, 756–57, 9 L.Ed.2d 770 (1963); *Wilson v. Butler*, 825 F.2d 879, 880 (5th Cir.1987), *cert. denied*, 484 U.S. 1079, 108 S.Ct. 1059, 98 L.Ed.2d 1021 (1988).

We substantially adopt the district court's analysis of Wilkerson's counsel claims. *Wilkerson v. Collins*, No. H–91–2252 (S.D.Tex. August 14, 1991) (Memorandum Opinion).

### 1. Standard.

Ineffective assistance of counsel claims are reviewed for federal constitutional error under the two-prong standard of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *See Burger v. Kemp*, 483 U.S. 776, 107 S.Ct. 3114, 97 L.Ed.2d 638 (1987). To satisfy this standard a criminal defendant must establish:

> First ... that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel"

guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversarial process that renders the result unreliable.

*Strickland v. Washington,* 466 U.S. at 687, 104 S.Ct. at 2064.

 "Judicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689, 104 S.Ct. at 2065. Every effort must be made to eliminate "the distorting effect of hindsight." *Id.* Courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance" and a defendant must overcome the presumption that the "challenged action 'might be considered sound strategy.'" *Id.* (quoting *Michel v. Louisiana,* 350 U.S. 91, 101, 76 S.Ct. 158, 164, 100 L.Ed. 83 (1955)).

 To demonstrate prejudice the "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* 466 U.S. at 694, 104 S.Ct. at 2068. When a defendant challenges his death sentence, the question is "whether there is a reasonable probability that, absent the errors, the sentencer—including the appellate court, to the extent it independently reweighs the evidence—would have concluded that the balance of aggravating and mitigating circumstances did not warrant death." *Id.* at 695, 104 S.Ct. at 2068-69.

### 2. Deficient performance?

#### a. *Reasonable investigation.*

Wilkerson asserts that trial counsel were ineffective for failing to conduct a reasonable investigation to determine what defenses were available. Specifically, he argues that trial counsel should have fully investigated his mental condition, and

sought an expert evaluation of his mental and psychological state.

 Strategic choices of trial counsel are granted a heavy measure of deference in a subsequent habeas corpus attack. *Strickland,* at 690-91, 104 S.Ct. at 2066. In the present case, the trial court found as a factual matter that "counsel conducted reasonable inquiry into the applicant's psychological history and, based upon information received as well as observations of the applicant, made a decision to forego further inquiry into matters of sanity, competency, or psychological status." *Ex Parte Wilkerson,* No. 383749-B (Harris County, Tex. August 12, 1991). The record reflects that trial counsel retained an investigator to explore Wilkerson's background and mental condition. Counsel talked with and observed Wilkerson. He interviewed Wilkerson's family. This investigation did not lead counsel to believe that Wilkerson's mental state would support a defense at the guilt-innocence phase or produce different evidence for mitigation of punishment. When viewed under the deferential *Strickland* standard, these procedures and this conclusion do not demonstrate that the alleged limits of trial counsel's investigation constituted unreasonable assistance of counsel for Wilkerson's defense.

#### b. *Development of mitigating evidence.*

Wilkerson asserts that he was denied effective assistance of counsel because trial counsel failed to investigate factors in his background and mental competency which would have produced mitigating evidence. Wilkerson argues that, had trial counsel conducted an independent background investigation, they would have discovered substantial mitigating evidence.

The mitigating evidence Wilkerson now asserts was available consists of: school records which reveal that a psychologist or psychiatrist interviewed Wilkerson as a child and found he had mental limitations; his alleged present mental impairment; his alleged deprived family background; and, his asserted past good behavior and lack of criminal record. Because his attorneys at trial failed to discover or develop this miti-

gating evidence, Wilkerson claims he is entitled to relief.

These allegations are not sufficient, however, to demonstrate that he was denied the effective assistance of counsel. We must strongly presume that trial counsel rendered adequate assistance and that the challenged conduct was the product of reasoned trial strategy. *Strickland* at 690, 104 S.Ct. at 2066. Wilkerson's assertions do not counteract *Strickland*'s presumption. Although no mitigating evidence or witnesses were presented by defense counsel at the punishment phase, failure to present mitigating evidence "if based on an informed and reasoned practical judgment, is well within the range of practical choices not to be second-guessed." *Mattheson v. King*, 751 F.2d 1432, 1441 (5th Cir.1985).

Wilkerson's trial counsel interviewed Wilkerson, his mother, and other relatives. Neither Wilkerson nor his relatives were able to supply the names of potential defense witnesses. Investigation did not reveal reason to suspect that Wilkerson's mental capacity was in any fashion impaired. "[W]hen a defendant has given counsel reason to believe that pursuing certain investigations would be fruitless or even harmful, counsel's failure to pursue those investigations may not later be challenged as unreasonable." *Burger v. Kemp*, 483 U.S. 776, 795, 107 S.Ct. 3114, 3126, 97 L.Ed.2d 638 (1987) (quoting *Strickland v. Washington*, 466 U.S. at 691, 104 S.Ct. at 2066). Wilkerson does not here assert the failure of trial counsel to object to the prosecutor's peremptory challenges as ineffective assistance of counsel. Wilkerson has failed to demonstrate that counsel's performance was defective within the meaning of *Strickland.*

### 3. Prejudice?

Wilkerson claims that there exists a reasonable probability that, but for the failure of trial counsel to investigate, the result of the proceeding would have been different. Under *Strickland*, however, a petitioner cannot "simply allege but must 'affirmatively prove' prejudice." *Celestine v. Blackburn*, 750 F.2d 353, 356 (5th Cir.)

(citation omitted), *cert. denied*, 472 U.S. 1022, 105 S.Ct. 3490, 87 L.Ed.2d 624 (1985). Assuming *arguendo* that Wilkerson's counsel's performance was deficient, Wilkerson has not shown that presentation of the allegedly mitigating evidence would have affected the outcome of his trial. Wilkerson has failed to establish prejudice. He has failed to show the existence of evidence of sufficient quality and force to raise a reasonable probability that, had it been presented to the jury, a life sentence would have resulted. When either prong of *Strickland,* deficient performance or prejudice, is not proved the petitioner is not entitled to relief. *Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064.

### 4. Chilled?

Wilkerson asserts that the Texas statute so chilled counsel that he was deterred from developing or presenting mitigating evidence. Alternatively, Wilkerson argues that trial counsel did not make strategic decision not to pursue or present such evidence, but, rather, counsel had no idea that mitigating evidence existed. These contentions are also without merit. Trial counsel argued to the jury Wilkerson's age and his acceptance of responsibility as if they could be considered within the Texas special issues. *Cf. Russell v. Lynaugh*, 892 F.2d 1205, 1215 (5th Cir.1989). No chilling effect was shown or could be implied.

### IV.

The judgment of the district court is AFFIRMED. The stay of execution is VACATED.

KING, Circuit Judge, specially concurring:

I concur in the judgment and I join in the opinion except for part III.B.2. As to that part, I believe we are controlled by the court's recent decision in *Graham v. Collins*, 950 F.2d 1009 (5th Cir.1992), with which I continue to respectfully disagree.