**UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

_____

**No. 92-2918**
_____


**CURTIS PAUL HARRIS,**

**Petitioner-Appellant,**

**versus**

**JAMES A. COLLINS, DIRECTOR,
TEXAS DEPARTMENT OF CRIMINAL JUSTICE
INSTITUTIONAL DIVISION,**

**Respondent-Appellee.**

_____

Appeal from the United States District Court
for the Southern District of Texas
_____

(April 22, 1993)

Before GARWOOD, JONES, and EMILIO GARZA, Circuit Judges.

EDITH H. JONES, Circuit Judge:

Thirteen years ago, Curtis Paul Harris was first convicted of murder in a Texas court and was sentenced to death. He has since been tried, convicted and sentenced to death again, and he has unsuccessfully sought relief on direct appeal and by habeas corpus in state court. These protracted proceedings lend new meaning to the phrase "exhaustion" of state remedies.[1] After Harris filed a federal petition for writ of habeas corpus, the district court, in a very thoughtful opinion, denied relief on all

---

[1] Each time Harris appealed on direct review to the Texas Court of Criminal Appeals, that court took three years to address his case.

claims and refused to grant a certificate of probable cause to appeal. Harris now appeals to this court for a certificate of probable cause. We deny the application.

## FACTS AND PROCEDURAL HISTORY

On the night of December 11, 1978, Curtis Paul Harris, James Manuel, Curtis's girlfriend Valerie Rencher and his brother Danny Harris drove their car to visit a friend in Bryan. Upon arriving at the friend's house they discovered she was not there. Their car would not start, and the three men began to beat up the car and tear up the interior.[2]

When no neighbor could be found to help with the car the group walked down the road and flagged a passing pick-up truck. A would-be Good Samaritan, Tim Merka, stopped his truck and attempted for 20-25 minutes to repair their car. Frustrated at the car's continued breakdown, the group decided to take Merka's truck. Danny pushed Merka down and pinned him to the ground. While Danny sat on Merka's chest, Curtis Harris began to beat him in the head with an automobile jack. Valerie Rencher testified that she begged him to stop but Harris hit the victim at least six more times. Merka died of severe injuries to the head and brain. He suffered fifteen head lacerations that were consistent with having been inflicted by a bumper jack shaft and ratchet mechanism.

The group's destructive instincts were not yet sated. Leaving Merka's body in a ditch, they absconded with his pick-up,

---

[2] This account is primarily taken from the opinion set forth in the Texas Court of Criminal Appeals. Harris v. State, 738 S.W.2d 207, 213-15, 224-25 (en banc).

2

appropriated his shotgun and drove to a U-Totem store in Waller, which they robbed at gunpoint of the cash in the till and a change bottle that contained donations for the Multiple Sclerosis Society. Upon their return to Bryan about midnight, Danny Harris secreted Merka's truck. The truck was found at 10:00 a.m. on December 12, 1978 on the Old Mumford Road in Bryan approximately four blocks from the Harris house.

Harris was found guilty based particularly on the testimony of his girlfriend Valerie Rencher and the testimony of the U-Totem clerk who saw him during the robbery in which Merka's shotgun was used. Physical evidence against him included Merka's Texas A&M identification card, gun case and payment book, which were found in the woods behind Harris's home. The jury found Harris guilty of murder and sentenced him to death. The Texas Court of Criminal Appeals reversed Harris' convictions due to improper restrictions on cross-examination, Harris v. State, 642 S.W.2d 471 (Tex. Crim. App. 1982), but he was retried and again sentenced to death. The conviction was affirmed by the Texas Court of Criminal Appeals, Harris v. State, 738 S.W.2d 207 (Tex. Crim. App. 1987) and petition for writ of certiorari was denied by the U.S. Supreme Court. Harris v. Texas, 484 U.S. 872, 108 S. Ct. 207, 98 L.Ed.2d 158 (1987). Having exhausted state collateral remedies, Harris next applied for a stay of execution in the United States District Court for the Southern District of Texas. Eventually, the district court denied relief and denied Harris's request for a

certificate of probable cause to appeal. He now appeals the denial of the certificate of probable cause to this court.

Harris argues four issues in his effort to obtain CPC. First, he asserts that the prosecutor utilized peremptory challenges in a racially discriminatory way. Second, he states under the Texas death penalty law, the jury was unable to consider and give effect to mitigating evidence of Harris' role in committing the offense. Third, he contends that the trial court violated his due process rights by "testifying" into the record about events surrounding the separation of jurors. He finally argues that two prospective jurors were improperly excused for cause in violation of Witherspoon v. Illinois.

## DISCUSSION

This court lacks jurisdiction to hear an appeal in this case unless a certificate of probable cause is granted. Fed. R. App. Proc. 22(b). To obtain a certificate of probable cause, Harris must "make a substantial showing of the denial of a federal right." Barefoot v. Estelle, 463 U.S. 880, 893, 103 S. Ct. 3383, 3394, 77 L.Ed.2d 1090 (1983); Jones v. Whitley, 938 F.2d 536, 539 (5th Cir. 1991, cert. denied, ____ U.S. _____, 112 S. Ct. 8, 115 L.Ed.2d 1093 (1991). To sustain this burden, Harris "must demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues [in a different manner]; or that the questions are adequate to deserve encouragement to proceed further". Barefoot, 463 U.S. at 493 n.4, 103 S. Ct. at 3394 n.4.

4

### A.   Batson Claim.

Harris initially seeks a certificate of probable cause to review his claim that the prosecutor utilized a peremptory challenge in a racially discriminatory fashion, violating Batson v. Kentucky, 476 U.S. 79, 106 S. Ct. 1712, 90 L.Ed.2d 69 (1986). The prospective juror was Georgia Fay Harris, a black woman. The record reflects that Harris's counsel did not object at trial to the exclusion of Ms. Harris. For this reason, we must follow established circuit precedent and find that Harris failed to assert a proper Batson claim as a matter of federal law. Batson, 476 U.S. at 100, 106 S. Ct. at 1725; Wilkerson v. Collins, 950 F.2d 1054, 1063 (5th Cir. 1992); United States v. Erwin, 793 F.2d 656, 667 (5th Cir. 1986). As we held in Wilkerson, 950 F.2d at 1063, the fact that the state habeas court later considered on the merits the prosecutor's alleged racial use of preemptory challenges does not cure the defect, fatal to federal review, of failure to object timely to the peremptory strike. See also Jones v. Butler, 864 F.2d 348, 369 (5th Cir. 1988) (on pet. for reh.).

Harris asserts that Powers v. Ohio, ____ U.S. ____, 111 S. Ct. 1364, 113 L.Ed.2d 411 (1991) announced a new rationale for Batson which would dispense with the contemporaneous objection rule in order to preserve jurors' equal protection rights. This is not correct. Powers applied Batson to peremptory challenges of jurors of a different race from the defendant. Nothing in Powers changes the procedure appropriate for asserting a Batson claim. Further, Powers itself strongly suggests that a contemporaneous objection

5

must be made.  <u>Powers</u>, ____ U.S. at ____, 111 S. Ct. at 1371-72 (the trial court has a duty to make a prompt inquiry during voir dire concerning improper exclusion of jurors when the issue is raised).  This circuit has continued to apply the rule of contemporaneous objection even after <u>Powers</u>.  <u>Wilkerson</u>, 950 F.2d 1062-63.  We may not consider this argument further.[3]

### B.  Possible Mitigating Evidence.

Harris asserts that according to the law of parties instruction given to the jury during the guilt phase of the trial the jury was never required to decide whether the petitioner physically caused the death of Merka in order to find him guilty of capital murder.  Harris also asserts that the penalty phase inquiries posed by Texas law to the jury failed to allow them to give mitigating effect to his allegedly less culpable role in the offense.[4]  Taken together, these conditions are said to render

---

[3]     Harris tries to circumvent our federal contemporaneous-objection rule by asserting that race was so plainly a ground for the prosecutor's exclusion of Ms. Harris that no objection was needed to preserve the error. We disagree.  The purpose of the prosecutor's question, as he explained to the state habeas court, was to ascertain whether Ms. Harris might feel an affinity, or "kinship", for Curtis Harris, because they were from the same town, of the same race and had the same last name.  He pointed out that he would not have needed to make this inquiry if Ms. Harris had been white.  The state habeas court accepted this reason, as well as several others articulated by the prosecutor, and found that the peremptory strike was not exercised discriminatorily.  Harris has mischaracterized the state court's finding as permitting a "race-plus" peremptory strike after <u>Batson</u>.  Even if there were no federal contemporaneous objection component to a <u>Batson</u> claim, we would be bound by the state court's finding.  28 U.S.C. § 2254(d).

[4]     Under the law in effect when Harris committed his crime, the jury must answer "yes" to two questions before the defendant may be sentenced to death:

6

Texas law unconstitutional under <u>Penry v. Lynaugh</u>, 492 U.S. 302, 109 S. Ct. 2934 (1989).

The most serious weakness of this argument is its lack of evidentiary support. It was uncontroverted that Harris struck the deceased with an automobile jack. There was no direct evidence that any other person struck Merka with a jack or any instrument. The evidence was likewise uncontroverted that every blow delivered to the defendant's head could have been fatal, and Merka's hair and blood were found on the jack. Although a hammer found under Merka's body could have been used as the murder weapon, blood was found only on its handle, a spot inconsistent with aggressive use.

Substantively, Harris's argument has been undercut by the recent Supreme Court decision in <u>Graham v. Collins</u>, \_\_\_\_ U.S. \_\_\_\_, 113 S.Ct. 892, \_\_\_\_ L.Ed.2d \_\_\_\_ (1993). <u>Graham</u> reviewed this court's <u>en banc</u> decision holding that the Texas death sentencing statutory provisions sufficiently allow a jury to consider the mitigating effect of a defendant's youth at the time he committed a capital offense. <u>Graham v. Collins</u>, 950 F.2d 1009, 1027 (5th Cir. 1992). <u>Graham</u> was decided under the principle of <u>Teague v. Lane</u>, 489 U.S. 288, 109 S. Ct. 1060 (1989) and couched as a

---

(1) Whether the conduct of the defendant that caused the death of the deceased was committed deliberately and with the reasonable expectation that the death of the deceased or another would result;

(2) Whether there is a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society. Tex. Crim. Proc. Code Ann. Art. 37.071(b) (Vernon 1981).

7

decision whether an extension of <u>Penry</u> to youth is a "new rule" not cognizable on habeas, yet it makes clear that <u>Penry</u> is limited in scope. The Supreme Court noted that <u>Penry</u> addressed an atypical factual scenario, evidence that was a double-edged sword. The primary relevance of Penry's substantial evidence of retardation lay in its aggravating effect and its tendency to prove Penry's future dangerousness, while its mitigating effect on the future dangerousness issue was too tenuous to overcome the aggravating impact. ____ U.S. at ____, 113 S. Ct. at 900-901. Thus, while <u>Penry</u>'s jury had no reliable means of giving mitigating effect to his retardation as presented, <u>Graham</u>'s evidence of youth, transient childhood, and good character "was not beyond the jury's effective reach". ____ U.S. at ____, 113 S. Ct. at 902.

In this case, the only other person who could have struck a fatal blow to Merka was Danny Harris as he bestrode Merka's chest. But the possibility that Harris did not fatally wound Merka, as in <u>Graham</u>, was not beyond the effective reach of the jury in regard to either of the special issues. This court has succinctly answered Harris's <u>Penry</u>/<u>Graham</u> argument in a pre-<u>Graham</u> case, in which the defendant alleged that the jury could not give mitigating effect to the possibility that an accomplice might have killed the victim. In <u>Bridge v. Collins</u>, 963 F.2d 767, 770 (5th Cir. 1992), it was pointed out:

> If the jury members believed that Bridge's accomplice killed the victim, then they could have answered "no" to the first question.
>
> . . .

8

> If the jury members believed that Bridge did not shoot the victim, then they could have concluded that Bridge would not be a future threat.

Id. See also, Drew v. Collins, 964 F.2d 411, 421 (5th Cir. 1992).

Harris attempts to distinguish Bridge on the basis that Harris could have been convicted under the law of parties even though the jury believed he had not killed Merka. Then, according to the argument, the jury could have answered both special punishment issues without considering that Harris did not actually kill Merka. This argument derives from a recent district court opinion. Nichols v. Collins, 802 F.Supp. 66 (S.D. Tex. 1992). For several reasons, it is unpersuasive. First, Harris's argument ignores the law of this circuit that a jury need only be provided one fair vehicle for considering mitigating evidence. White v. Collins, 959 F.2d 1319, 1322-23 (5th Cir. 1992), cert. denied, ____ U.S. ____, 112 S. Ct. 1714, 118 L.Ed.2d 419 (1992)); Boyde v. California, 494 U.S. 370, 382 n.5, 110 S. Ct. 190, 199 n.5, 108 L.Ed.2d 316 (1990). Second, the state points out that in Drew and in Bridge the jury was instructed to convict under the law of parties. Drew, 964 F.2d at 421; Drew v. State, 743 S.W.2d 207, 214 n.3 (Tex. Crim. App. 1987) (describing the facts of Drew). These cases are not factually distinguishable. Third, Harris's reliance on Nichols[5] is unavailing. Besides having had its opinion in regard to sentencing vacated pending appeal, the court in Nichols simply did not discuss the controlling law of the circuit in

---

[5] Nichols has been stayed in part pending appeal to the Fifth Circuit, Nichols v. Collins, No. 92-2720 (Dec. 30, 1992).

9

Bridge. Nichols, 802 F.Supp. at 71-72. Fourth, the Supreme Court's decision in Graham appears to vitiate any legitimate disagreement among jurors otherwise attributable to Nichols.

**C.    The Judge's Statements.**

During his trial, Harris moved for mistrial under state law based on the allegations of an improper separation of the jury. In denying the petitioner's motion, the trial judge described on the record the events surrounding his supervision of the jury while they transported their cars from the county parking lot to parking spaces underneath the courthouse before commencing deliberations. The separation occurred after the jury had been given the charge at the end of the guilt\innocence phase of the trial. After providing his recollection of the event, the trial judge testified that he was "positive that none of the jurors had access to any information or contact with any other person during this process." Harris contends that under Tyler v. Swenson, 427 F.2d 412 (8th Cir. 1970), this action offended his due process rights.[6] Tyler, however, stands only for the proposition that when the testimony of the trial judge addresses material and disputed facts, a due process violation may occur. Tyler, 427 F.2d at 417.

In this case, the trial judge merely offered his recollections of matters within the judge's observations of the trial. Harris offered no evidence contrary to the trial judge's statements. Compare Harris v. State, 738 S.W.2d at 223 (noting

---

[6]    Brown v. Lynaugh, 843 F.2d 849 (5th Cir. 1989), cited by Harris, is inapposite to this case as in Brown, the judge testified on a matter of guilt. Id. at 849.

10

"[none of the judge's] statements were refuted"), with <u>Tyler</u>, 427 F.2d at 417 (noting the testimony of the judge "must be challenged by the petitioner"). Thus, under <u>Tyler</u>, Harris fails to demonstrate a material conflict regarding disputed facts.

### D. The Exclusion of Jurors Easley and Koy for Cause.

Finally, Harris contends that the prosecutor improperly challenged for cause two prospective jurors, Easley and Koy, in a manner that evaded and violated the Supreme Court's decision in <u>Witherspoon v. Illinois</u>, 391 U.S. 510, 88 S. Ct. 1770, 20 L.Ed.2d 776 (1968). Harris admits that the state may challenge jurors for cause on the basis of state law even if their answers regarding capital punishment did not entitle the state to a strike under <u>Witherspoon</u>. <u>Brooks v. Estelle</u>, 697 F.2d 586, 589-90 (5th Cir. 1982). Harris contends, however, that in questioning the potential venirepersons the prosecutor acted differently toward another member who voiced no personal concern about the death penalty but gave the same answers to the questions regarding minimum punishment under state law as Easley and Koy. Harris alleges that the prosecution's use of a state law principle to challenge for cause a juror perceived to be "soft" on the death penalty is a subterfuge designed to circumvent <u>Witherspoon</u>.[7]

---

[7] Harris's citation to <u>Swain v. Alabama</u>, 380 U.S. 202, 85 S. Ct. 824, 13 L.Ed. 759 (1965), in an effort to show that the prosecutor used his questioning for an improper purpose, is inapposite. <u>Witherspoon</u>-excludables are not a cognizable group for constitutional purposes, <u>Lockhart v. McCree</u>, 476 U.S. 162, 174, 106 S. Ct. 1758, 1765, 90 L.Ed.2d 137 (1986).

11

Whether this argument has merit is not for us to say in the first instance on a federal writ of habeas corpus. Under the _Teague_ rule, _supra_, it would manifestly be a "new rule" of constitutional criminal procedure to require courts to examine a prosecutor's conduct in _voir_ _dire_ to determine whether the prosecutor pretextually used answers to questions not related to _Witherspoon_ qualification to disqualify jurors who had not run afoul of _Witherspoon_ when directly questioned about their views of the death penalty. Further, this "new rule" does not fall under either of the exceptions to _Teague_, for if accepted, it neither makes conduct beyond the reach of criminal law nor is it implicit in our concept of ordered liberty. We decline to reach the merits of this argument.

### CONCLUSION

Because Harris has raised no issues on which reasonable jurists could disagree, we are compelled to **DENY** Harris' motion for CPC.

Motion for CPC **DENIED.**

12