Joseph Bennard NICHOLS, Petitioner,

v.

James A. COLLINS, Respondent.

Civ. A. No. H–92–36.

United States District Court, S.D. Texas, Houston Division.

Aug. 31, 1992.

Michael Kuhn, Sarah Pierce Cowan, Bracewell & Patterson, Houston, Tex., for petitioner.

Dana E. Parker, Atty. Gen. of Tex., Enforcement Div., Austin, Tex., William J. Delmore, III, Harris County Asst. Dist. Atty., Houston, Tex., for respondent.

## ORDER

HITTNER, District Judge.

Pending before the Court are the original petition for writ of habeas corpus (Document # 1), the motion to reopen evidentiary hearing (Document # 37), and the motion for expansion of the record (Document # 42) all filed by petitioner Joseph Bennard Nichols ("Nichols"). Having considered the motions, the submissions of both Nichols and the respondent James A. Collins ("Collins") and the applicable law, this Court determines that the petition should be granted and the motions should be denied.

### I.  FACTS

Nichols was indicted in Cause No. 323,-836 in the 178th District Court of Harris County, Texas for the offense of capital murder in connection with the death of Claude Shaffer, Jr. ("Shaffer"). Shaffer, a seventy year-old employee of Joseph's Delicatessen and Grocery, was killed on October 13, 1980 during the course of the robbery of that establishment committed by Nichols and another, Willie Ray Williams ("Williams"). Nichols and Williams were tried separately for the crime.

In July, 1981, Nichols was tried for capital murder in connection with the above offense ("Nichols I"). The Court declared a mistrial in that action based upon the jury's inability to answer the second special issue at the conclusion of the punishment phase.

In March, 1982, Nichols was again tried for capital murder ("Nichols II"). He was convicted, and after the jury answered the three special issues affirmatively during the sentencing phase, the court assessed punishment of death by lethal injection. On direct appeal, the Texas Court of Crimi-

nal Appeals affirmed the conviction and sentence. *See Nichols v. State*, 754 S.W.2d 185 (Tex.Crim.App.1988), *cert. denied*, 488 U.S. 1019, 109 S.Ct. 819, 102 L.Ed.2d 808 (1989).

Nichols subsequently filed a state application for writ of habeas corpus pursuant to the Texas Code of Criminal Procedure, article 11.07 (Vernon Supp.1991). The trial court held an evidentiary hearing upon two issues (ineffective assistance of counsel and statistical challenge to the Texas death penalty statute as unconstitutional as applied) and subsequently issued findings of fact and conclusions of law denying all relief requested. On December 12, 1991, the Texas Court of Criminal Appeals denied the relief which Nichols requested.

Nichols now seeks federal habeas corpus relief. This is Nichols first federal habeas corpus petition.

Upon review of Nichols' petition for writ of habeas corpus and application for stay of execution, this Court determined that Nichols was entitled to an additional, limited evidentiary hearing on issues of prosecutorial misconduct. Therefore, this Court granted a stay of execution on January 10, 1992.

## II. ISSUES PRESENTED

Nichols has presented the following issues to this Court:

1. Whether the special issues precluded the jury from considering or giving effect to mitigating evidence presented on behalf of petitioner.

2. Whether the special issues precluded the jury from considering or giving effect to the mitigating evidence that the petitioner did not kill the deceased.

3. Whether the prosecutor's blatant misconduct violated the doctrines of judicial estoppel, collateral estoppel, due process and the duty to seek justice.

4. Whether the petitioner's codefendant should have been compelled by the court to testify for the defense because he waived his right to remain silent when he testified at the first trial.

5. Whether the state had no power to retry petitioner.

6. Whether the prosecutor knowingly failed to correct perjured testimony that his star witness gave about her cooperation agreement with the state and he created the false impression in his summation that the witness was unaware of the promise of leniency that she received in exchange for her testimony.

7. Whether petitioner was denied the assistance of counsel at two lineups.

8. Whether the Texas death penalty statute and its consistent interpretation by the court of criminal appeals operated to deny petitioner his rights under the sixth, eighth, and fourteenth amendments to the United States Constitution.

9. Whether petitioner was denied effective assistance of counsel at trial because one of his lawyers had a conflict of interest between his representation of petitioner and his representation of defense witness Jose Nino.

10. Whether petitioner was denied effective assistance of counsel at both stages of his trial.

11. Whether petitioner was denied assistance of counsel on direct appeal when his court appointed lawyer was held in contempt, incarcerated and compelled to write the appellate brief while he was in jail.

12. Whether petitioner was denied a meaningful direct appeal.

13. Whether petitioner had ineffective assistance of counsel.

14. Whether the prosecutor injected the arbitrary factors of religion and sex into the trial.

15. Whether the prosecutor's evidence and argument concerning the character of the deceased rendered the punishment phase fundamentally unfair.

16. Whether the prosecutor highlighted petitioner's race during voir dire and exhibited his own bias against members of that racial minority.

17. Whether the prosecutor minimized the jury's sense of responsibility for participating in the determination of the appropriate

penalty in a capital case by incorrectly telling them during voir dire that death sentences imposed by juries are never carried out.

18. Whether petitioner's eighth and fourteenth amendment rights to proffer mitigating evidence were violated when the court sustained the prosecutor's objection to mercy pleas from his character witnesses.

19. Whether Article 37.071(A) of the Texas Code of Criminal Procedure was unconstitutionally applied because the court refused to define the operative terms when it instructed the jury.

20. Whether the Texas capital punishment laws are unconstitutional as applied.

21. Whether the automatic imposition of a death sentence when the jury affirmatively answered the special issues violated the eighth amendment prohibition against mandatory death sentences for a narrowly defined class of capital murderers.

22. Whether veniremen were erroneously removed for cause.

### III. STANDARD FOR WRIT OF HABEAS CORPUS

This Court is authorized by 28 U.S.C. § 2254(a) to "entertain an application for a writ of habeas corpus in behalf of a person ... [who] is in custody in violation of the Constitution or law or treaties of the United States. 28 U.S.C. § 2254(a) (1977). While "[t]he role of federal habeas proceedings [ ] are important in assuring that constitutional rights are observed ... [f]ederal courts are not forums in which to relitigate state trials." *Barefoot v. Estelle*, 463 U.S. 880, 887, 103 S.Ct. 3383, 3391, 77 L.Ed.2d 1090 (1983). "Even less is federal habeas a means by which a defendant is entitled to delay an execution indefinitely." *Id.* A federal habeas corpus court is without authority to correct wrongs other than those "wrongs of [federal] constitutional dimension." *Smith v. Phillips*, 455 U.S. 209, 211, 102 S.Ct. 940, 943, 71 L.Ed.2d 78 (1982).

This Court notes that 28 U.S.C. § 2254 affords a presumption of correctness to any factual determinations made by the state court after a full and fair evidentiary hearing. The presumption of correctness does not apply when, among other reasons, (1) the merits of the factual dispute were not resolved in the State court hearing, (2) the material facts were not adequately developed at the State court hearing, or (3) a federal court concludes from consideration of that part of the record of the State court proceeding in which the determination of such factual issue was made that such factual determination is not fairly supported by the record. Additionally, a federal habeas corpus petitioner may overcome the presumption of correctness by presenting convincing evidence that the factual determination by the State court was erroneous.

Nichols urges this Court to refuse to apply the presumption of correctness to the state court findings of fact due to alleged irregularities outlined below (See Section H infra). This Court determines that the irregularities neither fall within the statutory provisions which authorize this Court to disregard fact findings nor do they amount to convincing evidence that *all* fact findings were erroneous. Therefore, upon a review of the entire record, along with this Court's supplemental evidentiary hearing, the Court will evaluate each finding of fact individually to determine the proper application of the presumption of correctness.

### IV. ANALYSIS

#### A. MITIGATING EVIDENCE EXCLUDED:

Through grounds for relief one and two Nichols argues that the special issues precluded the jury from considering or giving effect to mitigating character evidence and to mitigating evidence that the petitioner did not kill the deceased.

In *Penry v. Lynaugh*, the Supreme Court identified two situations in which the capital sentencing statute has the potential for unconstitutional application. 492 U.S. 302, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989). Where the mitigating force of a defendant's proffered evidence about his background, character, or the circumstances of the offense (1) is not relevant to the statu-

tory special issues or (2) has relevance to his culpability beyond the scope of those issues, the jury has no vehicle for expressing a "reasoned moral response" to that evidence. *Id.* at 320, 109 S.Ct. at 2948. The appropriate inquiry is "whether the jury has applied the challenged instruction in a way that prevents the consideration of constitutionally relevant evidence." *Boyde v. California,* 494 U.S. 370, 380, 110 S.Ct. 1190, 1198, 108 L.Ed.2d 316 (1990). The United States Court of Appeals for the Fifth Circuit has now concluded, however, that *"Penry* does not invalidate Texas's statutory scheme ... in instances where no major mitigating thrust of the evidence is substantially beyond the scope of all the special issues." *Graham v. Collins,* 950 F.2d 1009, 1027 (5th Cir.) (en banc), *cert. granted,* — U.S. —, 112 S.Ct. 2937, 119 L.Ed.2d 563 (1992) (holding that evidence of relative youth and other character evidence are adequately covered by the second special issue). Based upon *Graham,* which is currently governing in this circuit, the Court determines that the special issues which the jury answered in the punishment phase were adequate to encompass the character evidence which Nichols submitted.

The *Graham* opinion does not foreclose Nichols' claim regarding mitigating evidence that the petitioner did not kill the deceased. *Graham* acknowledged that the scheme would be invalid in a situation where "some major mitigating thrust of the evidence is substantially beyond the scope of any of the issues." *Id.*

■ In *Enmund v. Florida,* the United States Supreme Court held that the eighth amendment protection against cruel and unusual punishment mandated that the punishment for participation in capital murder be tailored for "personal responsibility and moral guilt." 458 U.S. 782, 801, 102 S.Ct. 3368, 3378, 73 L.Ed.2d 1140 (1982). Texas responded to *Enmund* and reversed prior caselaw by holding that the law of parties could not be applied to the special issues at the punishment phase. *Green v.*

*State,* 682 S.W.2d 271 (Tex.Cr.App.1984), *cert. denied,* 470 U.S. 1034, 105 S.Ct. 1407, 84 L.Ed.2d 794 (1985). Thus, while the death penalty may be imposed against one convicted as a party to a capital offense, it may not be imposed on a capital defendant for the deliberate conduct *of another* or the future dangerousness *of another* without regard to the individual conduct of the defendant whose fate is being determined. *Id.* at 287. Based upon the mandate of Texas law, then, triggerman status is mitigating evidence.

■ The special issues submitted to the jury at sentencing under Texas law were, in 1981, the following:

(1) whether the conduct of the defendant that caused the death of the deceased was committed deliberately and with the reasonable expectation that the death of the deceased or another would result;

(2) whether there is a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society; and

(3) if raised by the evidence, whether the conduct of the defendant in killing the deceased was unreasonable in response to the provocation, if any, by the deceased.

Tex.Rev.Civ.Stat.Ann. art. 37.071 (Vernon 1989).

Upon review of the foregoing special issues, this Court finds that nontriggerman status is the type of evidence whose major mitigating thrust is substantially beyond the scope of any of the special issues. Most specifically, special issue number one inquires into the deliberateness of "the conduct" of the defendant that caused the death of the deceased. "The conduct" of the defendant convicted of capital murder under the law of parties is deliberate when the defendant is deliberately *a party* to the capital crime. With such imprecise inquiry into conduct, special issue one allows a jury to answer in the affirmative more easily for the *non*triggerman than for the triggerman. Thus, special issue number one

permits the jury to apply the law of parties to the nontriggerman unless the jury is specifically instructed at the punishment phase that the law of parties does not apply.

■ In the instant case, the Texas Court of Criminal Appeals determined that the failure to the trial court to instruct the jury that the law of parties may not be applied to the special issues during the sentencing phase is not fundamental error. *Nichols*, 754 S.W.2d at 198. This Court disagrees. The same jury that considers guilt/innocence also considers life/death. Because the law of parties applied at the guilt/innocence phase and not at the life/death phase, this Court determines that a failure to instruct a capital murder jury that the law of parties does not apply at the punishment phase is tantamount to instructing them that it *does* apply just as it did in the guilt innocence phase. As the court failed to instruct the jury in Nichols I that the law of parties does not apply to sentencing, this Court finds that special issue number one was unconstitutionally applied to Nichols.

## B. PROSECUTORIAL MISCONDUCT— IMPROPER STATEMENTS:

■ Prosecutorial statements may violate due process in two ways: first, the statements may implicate "a specific provision of the Bill of Rights" incorporated into the fourteenth amendment by the due process clause; second, the statement may constitute a denial of due process "generically." *Rogers v. Lynaugh*, 848 F.2d 606, 608 (5th Cir.1988). In reviewing prosecutorial statements or conduct, the Court should not find constitutional error in a trial which was less than perfect; rather a constitutional error derives from a trial which was unfair. *Donnelly v. DeChristoforo*, 416 U.S. 637, 643, 94 S.Ct. 1868, 1871, 40 L.Ed.2d 431 (1974). Such unfairness will exist when prosecutorial misconduct is "either persistent and pronounced or ... 

the evidence so insubstantial that [in probability] but for the remarks no conviction would have occurred." *Kirkpatrick v. Blackburn*, 777 F.2d 272, 281 (5th Cir.1985) (citations omitted), *cert. denied*, 476 U.S. 1178, 106 S.Ct. 2907, 90 L.Ed.2d 993 (1986). In the instant case, Nichols complains of a persistent denial of both specific and generic due process rights.

Through claim for relief number three, Nichols asserts that "the prosecutor's blatant misconduct violated the doctrines of judicial estoppel, collateral estoppel, due process and the duty to seek justice." Through this claim for relief, Nichols challenges the fundamental fairness of the State's efforts and ultimate success in knowingly convicting two men of the same act. Nichols urges that, although the evidence unequivocally demonstrated that Shaffer was killed by a single bullet, the State unfairly convicted two different men of firing that single bullet.

It is undisputed that on January 29, 1981, Williams plead guilty to "unlawfully while in the course of committing and attempting to commit the robbery of Claude Shaffer, Jr., hereafter styled the Complainant, intentionally caused the death of the Complainant by shooting him with a gun." (Williams transcript). The Court accepted that plea of guilty and, upon affirmative answers to special issues from the jury, assessed Williams' punishment at death. Subsequently, the State obtained Nichols' conviction and a death sentence upon an indictment which charges him with "unlawfully while in the course of committing and attempting to commit ROBBERY, intentionally cause the death of CLAUDE SHAFFER, JR., hereafter styled the Complainant, by SHOOTING THE COMPLAINANT WITH A GUN."

This Court has previously noted certain excerpts from State closing arguments in the trial of the two different defendants (Williams and Nichols) which are strikingly similar:

| Williams Trial | Nichols Trial |
|---|---|
| "Willie Williams is the individual who shot and killed Claude Shaffer. That is all there is to it. It is scientific. It is consistent. It is complete. It is final, and it is in evidence." | "Willie could not have shot him." |
| "[T]here is only one bullet that could possibly have done it and that was Willie Williams." | "And I submit to you from this evidence, [Nichols] fired the fatal bullet and killed the man in cold blood and he should answer for that." |
| | At the punishment phase: |
| | "Is it fair and equal for Willie Williams to sit up there on death row when this man planned the whole thing and fired the shot." |

---

This Court also notes the statement of facts provided by the Texas Court of Criminal Appeals on direct appeal of each case which are strikingly diverse:

| Williams Trial | Nichols Trial |
|---|---|
| Both men pulled guns on Claude Shaffer, the man behind the counter. Shaffer reached for and grabbed a pistol which he pointed at appellant [Williams]. Nichols fired a shot at Shaffer and Shaffer "went down" in what appellant described as a squatting position. Nichols and appellant turned and started to go out the door. Appellant still had his weapon pointed back toward Shaffer, who he thought had not been hit. Nichols went out the door, but appellant turned back toward the counter and saw Shaffer squatting with his back to appellant. *Appellant shot Shaffer in the back, killing him,* ran out of the store, and then came back inside. He testified that he returned to see whether he had hit the deceased. He removed a box which contained money from behind the counter. Then he ran out of the store. | As they approached the cash register, both men pulled guns on Claude Shaffer, the seventy year old victim. Shaffer bent down behind the counter, and it is controverted whether he was reaching for an unloaded pistol kept behind the store counter or whether he was simply taking cover. Appellant [Nichols] stated "Don't try it" and opened fire on Shaffer. It is unclear whether appellant's shots hit Shaffer. Appellant and Williams then turned and started to flee. As they reached the door, Williams turned and shot at Shaffer. *Again, it is unclear which shot contacted the victim.* Both men fled but, after running out of the Deli, Williams stopped and went back into the Deli, alone. Williams took the case box from behind the counter where the victim had been standing and ran out of the store. |

*Williams v. State,* 674 S.W.2d [315] 317 [Tex.Cr. App.1984] (emphasis added).

*Nichols,* 754 S.W.2d at 188, 315, (emphasis added).

---

In the Texas Court of Criminal Appeals opinion in *Nichols v. State,* the court disclaims its prior rendition of the "facts" as an "assumption ... based upon Williams' guilty plea and statements accepting responsibility for the murder." 754 S.W.2d at 201 n. 18. Instead, the court, like the State, supports different versions of the same event as possibilities flowing from inconclusive evidence. *Id.*

While this Court acknowledges the State's argument that the above are merely different interpretations of the same evidence and, therefore, not constitutionally infirm simply because each jury believed a different interpretation, this Court's concerns with the position are two fold. First, under such a theory, the constitution would not prevent the State from convicting an unlimited number of individuals for the precise same act which all could not physically have committed. Second, the integrity of the judicial system commands that citizens can rest assured that prosecutors are seeking truth and justice; and that when they find truth and justice they cannot seek a different truth and a different justice from the first.

Both parties concede that the question whether, in a criminal prosecution, the State should be constitutionally estopped from obtaining a fact finding in one trial and seeking and obtaining an inconsistent fact finding in another trial is a question of first impression in this circuit. In support of the above proposition, Nichols cites the special concurrence filed in *Drake v. Kemp,* 762 F.2d 1449 (11th Cir.1985) (Clark, J., concurring). In *Drake,* the majority of the Court determined that several instances of prosecutorial misconduct in argument during the sentencing of Drake rendered Drake's sentencing hearing fundamentally unfair. *Id.* at 1461. In his concurrence, Judge Clark added an instance of what he viewed as another example of prosecutorial

misconduct in that case—inconsistent theories argued by the State to convict two different individuals.

■ This Court determines that the due process boundary upon prosecutorial conduct and the appearance of basic fairness derived from that boundary command a determination that in a criminal prosecution, the State is constitutionally estopped from obtaining a fact finding in one trial and seeking and obtaining an inconsistent fact finding in another trial.

■ This Court is not suggesting that the State cannot prosecute several individuals for the same crime, as long as the law *and* physics provide for such. Williams and Nichols *can both* be guilty of capital murder because the state of Texas has determined, by law, that both are equally culpable without regard to who fired the bullet which killed Shaffer. However, Williams and Nichols *cannot both* be guilty of *firing* the same bullet because physics will not permit it. At the same time, the state of Texas has determined, by law, that it is important for purposes of sentencing that a jury know which one did fire the bullet which killed Shaffer. *Green,* 682 S.W.2d at 287.

■ This Court further determines that the foregoing denial of due process was not harmless error. Based upon the evidence adduced at the evidentiary hearing conducted by this Court, this Court makes the following supplemental findings of fact:

1. The law of parties was not submitted to the jury during Williams sentencing phase.

2. The assistant district attorney prosecuting Nichols I knew that the law of parties was not submitted to the jury during Williams sentencing phase.

3. The assistant district attorney prosecuting Nichols I did not argue during Nich-

ols I that only Nichols' bullet could have killed Shaffer.

4. The assistant district attorney prosecuting Nichols I visited with members of the jury following the grant of mistrial due to the jury's inability to answer all of the special issues.

5. The assistant district attorney prosecuting Nichols I learned from those jurors that whether or not Nichols was the "triggerman" had caused problems for the jury in considering the death penalty.

6. The assistant district attorney prosecuting Nichols I also prosecuted Nichols II.

7. The assistant district attorney prosecuting Nichols II argued during Nichols II that only Nichols' bullet could have killed Shaffer.

In light of the supplemental fact findings, this Court determines that the outcome of Nichols I, a jury hung on special issue due to the possible lack of Nichols' triggerman status, establishes the harm of the denial of due process in Nichols II.

Through his fourteenth, fifteenth, sixteenth, and seventeenth grounds of error, Nichols asserts that the prosecutor's statements during the sentencing phase of Nichols II (statements not addressed previously) were improper and resulted in an unfair sentencing hearing. The Court has previously outlined the criteria for reviewing such alleged prosecutorial misconduct. This Court finds from a review of the statements complained of that they do not rise to the level of a constitutional violation.

## C. PROSECUTORIAL MISCONDUCT— USE OF FALSE EVIDENCE, FAILURE TO DISCLOSE EVIDENCE:

▮ In order to obtain relief for prosecutorial misconduct through allegations of false evidence, a petitioner must demonstrate that a witness gave perjured testimony, the perjured testimony was material, and the prosecution used the testimony knowing that it was false. *Giglio v. United States*, 405 U.S. 150, 153–54, 92 S.Ct. 763, 765–66, 31 L.Ed.2d 104 (1963). In the alternative ground for relief three, Nichols urges that, because only one bullet killed Shaffer and because the State had obtained the conviction of another, Williams, for himself killing Shaffer, any evidence submitted in Nichols' trial that *Nichols* killed Shaffer is, by prior judicial pronouncement, false. Thus, Nichols argues that the State obtained his conviction based upon false evidence.

▮ The Court determines that the following state fact findings which relate to the alleged prosecutorial misconduct are *not* entitled to a presumption of correctness both because the record, as a whole, does not fairly support such factual determination and because Nichols has established by convincing evidence that the factual determination by the State court was erroneous:

1) The jury was presented with overwhelming evidence that both the applicant and Williams shot Shaffer. (FF # 62)[1]

Instead, this Court determines that the only conclusion which the record supports is that both Williams and Nichols shot at Shaffer but that *either* Williams or Nichols actually shot Shaffer.

As this Court has previously concluded, the State argued, the jury found, and the court accepted the determination in the Williams trial that Williams was the triggerman, not just a party to the offense. That fact was established as the *truth*. This Court has also concluded that the prosecutor in charge of Nichols II offered evidence and argued to the jury and court that Nichols was the triggerman. By prior judicial determination, the evidence submitted was necessarily false. Accordingly, this Court finds that the prosecutor in charge of Nichols II knowingly used false evidence to obtain the conviction and sentence in Nichols II.

▮ Through his sixth claim for relief, Nichols asserts that the prosecutor knowingly failed to correct perjured testimony that his star witness gave about her cooperation agreement with the state and created the false impression in his summation

---

**1.** Citations to the state habeas corpus findings of fact are noted as follows: (FF #).

that the witness was unaware of the promise of leniency that she received in exchange for her testimony.

The Court determines that the following state fact findings which relate to the alleged prosecutorial misconduct are entitled to a presumption of correctness because Nichols has failed to establish by convincing evidence that the factual determination by the State court was erroneous:

(1) Parker further testified that she had given a statement to the police; that the prosecutor made no deals with her in exchange for her statement and that no one from the District Attorney's Office had made any deals wit her; and, that she had not been offered a probated sentence in a pending, unrelated robbery charge in exchange for her testimony. (FF # 17);

(2) Parker was not charged in the instant case; instead, she was charged with hindering apprehension. (FF # 18);

(3) The Chief prosecutor told Parker's attorney that he would recommend a sentence of ten year's probation on Parker's pending aggravated robbery case if she would testify in Willie Williams' trial and in Nichols' trial. The prosecutor made it a stipulation of the offer that Ball not tell Parker about the recommendation, because the prosecutor wanted Parker to testify truthfully without any consideration of the offer. (FF # 19);

(4) Parker was not aware of any agreement made between the District Attorney's Office and Ball. Parker testified at Nichols' second trial that she had not entered into any agreement with the District Attorney's Office in exchange for her testimony. (FF # 20).

Based upon the foregoing facts, this Court concludes that Nichols claims for prosecutorial knowing use of perjured testimony do not satisfy the *Giglio* standard.

## D. ASSISTANCE OF COUNSEL:

Through his claim for relief number seven, Nichols asserts that he was denied the assistance of counsel at two lineups. Although the right to counsel has been extended to certain "critical" pretrial proceed-

ings, the United States Supreme Court has specifically held that no right to counsel exists at a lineup preceding the initiation of adversary judicial proceedings. *United States v. Wade*, 388 U.S. 218, 224, 87 S.Ct. 1926, 1930, 18 L.Ed.2d 1149 (1976) and *Kirby v. Illinois*, 406 U.S. 682, 689–90, 92 S.Ct. 1877, 1882–83, 32 L.Ed.2d 411 (1972).

Through his claims for relief number nine, ten, eleven, twelve, and thirteen, Nichols asserts that he was denied effective assistance of counsel at various stages of trial and appeal.

In order to prevail on a claim for ineffective assistance of either trial or appellate counsel, a habeas corpus petitioner must show that:

1. "Counsel's representation fell below an objective standard of reasonableness," with reasonableness judged under professional norms prevailing at the time counsel rendered assistance; and

2. There is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.

*Strickland v. Washington*, 466 U.S. 668, 688–94, 104 S.Ct. 2052, 2064–68, 80 L.Ed.2d 674 (1984). The standard is a highly deferential one due to the difficulty for reviewing courts to place themselves in counsel's position and evaluate the choices he or she should have made.

The Court determines that the following state fact findings which relate to the alleged ineffective assistance of counsel are entitled to a presumption of correctness because Nichols has failed to establish by convincing evidence that the factual determination by the State court was erroneous:

1) Nichols' counsel, Robert Scott, had previously represented Jose Oscar Nino on an unrelated burglary charge that had been disposed of in the 185th District Court prior to Nichols' trial. Scott was aware that Nino's involvement in the escape attempt was so little that Nino would not be adversely affected by testifying in Nichols' trial. (FF # 47);

2) Subsequent to Nichols' trial, Nichols' counsel, Neil Lane, was disbarred from the

practice of law for conduct·unrelated to Nichols' case. (FF # 48);

3) Nichols' counsel made a conscious tactical decision not to present or not to focus upon evidence of his belief that the applicant was drinking and taking drugs sometime prior to the offense. Nichols' counsel did not feel prohibited by the Texas death penalty scheme from introducing such evidence. Nichols' counsel found no real evidence that Nichols was not in control of his faculties at the time of the offense. (FF # 32);

4) Nichols' counsel were familiar with the facts of the case, presented evidence, conducted cross-examination, made relevant objections throughout trial, and interviewed and presented the testimony of fifteen punishment witnesses. (FF # 54);

5) The Court of Criminal Appeals considered both the appellate briefs submitted on behalf of Nichols. (FF # 56).

Based upon the foregoing facts, this Court concludes that Nichols claims for ineffective assistance of counsel do not satisfy the *Strickland* standard.

## E. SIXTH AMENDMENT RIGHT TO COMPULSORY PROCESS:

Through ground for relief number four, Nichols asserts that his codefendant, Williams, should have been compelled by the court to testify for the defense because he waived his right to remain silent when he testified at the first trial.

■■■■ A criminal defendant's right to present a defense does not override a witness' privilege against self-incrimination. *United States v. Whittington,* 783 F.2d 1210, 1218–19 (5th Cir.), *cert. denied,* 479 U.S. 882, 107 S.Ct. 269, 93 L.Ed.2d 246 (1986). Additionally, a witness' testimony in a prior proceeding or other disclosure of incriminating facts does not amount to a perpetual waiver of the privilege in all subsequent proceedings. *United States v. Wilcox,* 450 F.2d 1131, 1141–42 (5th Cir. 1971), *cert. denied,* 405 U.S. 917, 92 S.Ct. 941, 30 L.Ed.2d 787 (1972).

■■■ Nichols does not dispute that he was permitted to read Williams' testimony from Nichols I when, in Nichols II, Williams invoked his fifth amendment right. *See also* FF # 22. Thus, the Court concludes that Nichols has failed to sustain his burden of demonstrating prejudice which would have been sufficient to override Williams' fifth amendment privilege.

## F. DOUBLE JEOPARDY:

Nichols, through his fifth claim for relief urges that the State had no power to retry Nichols after the mistrial was granted in his first trial.

■■■ Double jeopardy protections apply when an event terminates the original jeopardy. *Richardson v. United States,* 468 U.S. 317, 325, 104 S.Ct. 3081, 3086, 82 L.Ed.2d 242 (1984). For example, in a capital case, if the defendant is "acquitted" of the death penalty during the sentencing phase because a jury or an appellate court decides that the prosecution has not proven its case, the state is prohibited from seeking the death penalty at a retrial. *Bullington v. Missouri,* 451 U.S. 430, 443, 101 S.Ct. 1852, 1860, 68 L.Ed.2d 270 (1981). Declaration of mistrial is not an event which terminates the original jeopardy. *Richardson,* 468 U.S. at 325, 104 S.Ct. at 3086.

This Court is mindful of the equitable application of the double jeopardy clause which Nichols seeks herein. On August 31, 1981, an amendment to Article 37.071(3) became effective. Pursuant to that amendment, if a jury is unable to answer one of the three special issues during the capital punishment phase, then the court must sentence the accused to life imprisonment. Thus, had Nichols been tried the first time approximately thirty days later, he would have benefitted from the new statute. However, the Texas Court of Criminal Appeals has affirmed the determination that the amendment is to apply prospectively only. *Nichols v. State,* 754 S.W.2d 185, 204 (Tex.Crim.App.1988).

Based upon the foregoing, this Court finds that Nichols double jeopardy claim is without merit.

## G. CONSTITUTIONALITY OF TEXAS DEATH PENALTY STATUTE:

Through his grounds for relief eight, nineteen, twenty, and twenty-one, Nichols asserts that the Texas Death Penalty Statute is unconstitutional, both on its face and as applied in this case.

Nichols' arguments regarding the constitutionality of the Texas Death Penalty Statute on its face are foreclosed by the prevailing opinion from the Fifth Circuit Court of Appeals, *Graham v. Collins,* cite. As previously outlined, however, this Court concludes that the Texas Death Penalty Statute was unconstitutionally applied to Nichols in this case.

## H. UNCONSTITUTIONAL EXCLUSION OF JURORS FOR CAUSE:

Through ground for relief number twenty-two, Nichols asserts that veniremen were erroneously removed for cause.

■ A petitioner's federal habeas corpus claim may be subject to procedural default if his trial counsel fails to contemporaneously object to the error which petitioner seeks to assert on federal habeas corpus petition. *See Wainwright v. Sykes,* 433 U.S. 72, 87, 97 S.Ct. 2497, 2506, 53 L.Ed.2d 594 (1977). Where a petitioner is represented by trial counsel who is not constitutionally ineffective, that petitioner must "bear the risk of attorney error that results in a procedural default. *Murray v. Carrier,* 477 U.S. 478, 488, 106 S.Ct. 2639, 2645, 91 L.Ed.2d 397 (1986).

The Court determines that the following state fact findings which relate to the alleged unconstitutional exclusion of jurors for cause are entitled to a presumption of correctness because Nichols has failed to establish by convincing evidence that the factual determination by the State court was erroneous:

1. The trial court granted the State's challenge for cause to prospective juror Veronica Gonzales. The applicant lodged no objection Gonzales' exclusion. (FF # 10);

2. The trial court granted the State's challenge for cause to prospective juror Dovie Day. The applicant made no specific objection but asked that the trial court note his "exception" to the ruling. (FF # 11);

3. The trial court granted the State's challenge for cause to prospective juror Joyce Woodyard. The applicant made no objection to the exclusion of Woodyard for cause. (FF # 12).

Based upon the foregoing facts, this Court concludes that Nichols claims for erroneous exclusion of veniremen for cause are foreclosed.

## I. CUMULATIVE CONSTITUTIONAL ERROR

■ The Fifth Circuit Court of Appeals has adopted the cumulative constitutional error analysis. *See Derden v. McNeel,* 938 F.2d 605 (5th Cir.1991). In *Derden,* Judge Reynaldo G. Garza, writing for the majority, noted that at the beginning of a criminal trial "we [have] an entire cloth sheet." *Id* at 618. That cloth, according to Judge Garza, developed a tear as the trial progressed due to the conduct of the trial judge and the prosecutor. *Id.*

> With each improper remark the tear lengthened until at the end of trial what was one sheet is now two. It takes two sheets to obtain relief in a habeas context. The two sheets are symbolic of a due process violation.

*Id.*

This Court makes the following findings of fact which impact upon a cumulative constitutional error analysis.

1. The state judge to which Nichols' state habeas corpus petition was assigned, Judge William Harmon, was a state prosecutor before becoming a district judge.

2. Judge Harmon was, while a state prosecutor, in charge of prosecuting at least one offense *against Nichols.*

3. The offense which Judge Harmon prosecuted against Nichols was one of the extraneous offenses offered in connection with his conviction in the instant case.

4. Judge Harmon did not *sua sponte* recuse himself from Nichols state habeas corpus case.

5. Judge Harmon made certain remarks on the record after hearing evidence and argument during Nichols' state habeas corpus hearing. In response to a witness' suggestion that Nichols' counsel could obtain statistical data regarding habeas corpus cases by issuing a bench warrant to bring each Harris County inmate in for a hearing, Judge Harmon responded "Could we arrange for a van to blow up the bus on the way down here?"

6. On June 28, 1991, Judge Harmon signed thirty-five pages of findings of fact and conclusions of law (hereinafter "Court findings") which resolved the merits of Nichols' state habeas corpus petition.

7. Those "Court findings," actually entitled "Respondent's Amended Proposed Findings of Fact, Conclusions of Law and Order," are a verbatim adoption of the State's proposed findings and reflect no independent input from the state district judge.

Based upon the foregoing supplemental findings of fact, along with the other errors indicated above, this Court determines that, like Derden, Nichols' cloth has been torn into two sheets. According, this Court finds that cumulative error during Nichols' trial which has perpetuated throughout the state habeas corpus process has resulted in a denial of due process.

## J. BRADY VIOLATION

In his post-federal evidentiary hearing briefing, Nichols has raised a question concerning the State's alleged suppression of exculpatory evidence. Specifically, Nichols urges that within documents obtained just prior to the hearing, Nichols has discovered exculpatory information which Nichols' trial counsel sought but was not provided. As this issue is necessarily raised for the first time in this proceeding, this Court determines that relief on this ground should be denied without prejudice to refiling after exhausting state remedies. For that same reason, this Court determines that it is neither necessary to expand the record in this cause or to reconvene the evidentiary hearing in order to consider evidence relating to this issue.

## VI. CONCLUSION

Based upon the foregoing, it is

ORDERED that Nichols' petition for writ of habeas corpus is GRANTED in part and DENIED in part. According, it is ORDERED that within 120 days of the date of the entry of this order, the State of Texas SHALL EITHER RETRY OR RELEASE Nichols.